## Penxa et al. v. Tanno.

W. S. McLean, 3rd, for plaintiff; no appearance for defendant.

VALENTINE, J., July 21, 1930.—Plaintiff, by her next friend and mother, filed a bill of complaint praying that a purported marriage between her and the defendant be declared void.

By order of the court of December 9, 1929, it was directed that the defendant (whose whereabouts were unknown) answer the bill on or before January 15, 1930, and that a statement of the substance and object of the bill and a copy of the order be published as therein directed. Publication was made, and on January 27, 1930, a decree *pro confesso* was duly entered.

For convenience we summarize the essential

### Facts.

1. Plaintiff is an infant, thirteen years of age, native born, residing with her mother in the Borough of Kingston, Luzerne County, Pennsylvania.

2. Prior to September, 1929, plaintiff, while residing with her mother at Fern Brook, Luzerne County, became acquainted with the defendant, who was born in Japan of Japanese parentage and was twenty-eight years of age.

3. On September 8, 1929, plaintiff and defendant appeared before William A. Loftus, justice of the peace, Plains, Pennsylvania (plaintiff falsely making affidavit that she was twenty-one years of age), and procured a license to marry.

4. Upon procuring said license, a marriage ceremony was performed by said justice of the peace.

5. Immediately after the performance of the marriage ceremony, plaintiff's mother learned of the same and took the plaintiff away from her husband.

6. Plaintiff and defendant did not cohabit, nor was said marriage consummated.

### Discussion.

"At common law the age at which persons were deemed competent to contract a valid marriage was fourteen years for the man and twelve years for the woman, these periods having been adopted because at such an age the parties were deemed to have attained puberty, with capacity to consent on the part of females and to commit rape on the part of the males. . . . The marriage of an infant under seven years of age was regarded as absolutely void, but where the parties were older and yet below the age of consent, the marriage was deemed merely voidable. . . . In England the ecclesiastical courts assumed jurisdiction to decree the annulment of the marriage of infants who were below the age of consent. In this country, due to the fact that such courts did not exist here, courts of equity, at an early date, assumed such jurisdiction:" 9 R. C. L. 272 § 32.

In Hullahan v. Paritz, 24 Luzerne Legal Reg. 182, Judge Fuller reached the conclusion that a marriage of a girl obviously under age without the consent of her parents would be annulled by decree of the chancellor.

In Greene v. Brandt, 13 D. & C. 712, Judge Coughlin held that the court would not decree the annulment of a marriage of a minor eighteen years of age who, without the consent of her parents, obtained a license through misrepresentation of age, not obvious at the time.

In the present case plaintiff's minority was obvious; moreover, she was under the age of sixteen, and the issuance of a license to marry was expressly prohibited by the Act of March 24, 1927, P. L. 64. As stated by Judge Coughlin in Greene v. Brandt, *supra*, the provisions of this act "would indicate that even though parent or guardian consented, no license to marry could issue to one under that age. The act, however, provides that a judge of the orphans' court shall have discretion to authorize a license to be issued by the clerk of the orphans' court in special cases where one or both persons are under the age of sixteen years."

Our divorce laws contain no provision which applies to the present situation, but we are of the opinion that the jurisdiction of equity may be invoked

for the annulment of a marriage for a cause not covered by our acts regulating divorce.

By reason of the nonexistence in this country of ecclesiastical courts, equity very generally assumed jurisdiction to decree the annulment of invalid marriages: 9 R. C. L. 267, § 27.

Courts of equity in this country have, as a general rule, assumed inherent jurisdiction to decree annulment of marriages for certain causes which, under the laws as administered in the ecclesiastical courts, were ground for a divorce *a vinculo matrimonii:* 9 R. C. L. 396, § 190.

We make the following

### Conclusion of law.

Plaintiff is entitled to a decree of annulment.

Accordingly, under the provisions of Equity Rule No. 51, we enter the following

### Final decree.

Upon consideration of the foregoing case, it is ordered adjudged and decreed as follows:

That the purported marriage between the plaintiff, Catherine Penxa, and the defendant, Harry S. Tanno, be and the same is hereby annulled.

From Frank P. Slattery, Wilkes-Barre, Pa.